UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-81298-CIV-HURLEY

BROOKLANDS, INC.,

      Plaintiff,

vs.

JEFFREY SWEENEY and
US CAPITAL PARTNERS, LLC,

      Defendants.

_____/

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' PARTIAL MOTION TO DISMISS UNDER FED. R. CIV. P. 12 (b) (6)

      **THIS CAUSE** arises out of a dispute over a $1.5 million credit facility application and related fee agreement between the plaintiff, Brooklands, Inc. ("Brooklands"), a manufacturer of touchless thermometers, and the defendant, US Capital Partners, LLC ("US Capital"), a private investment bank.[1]  The case is currently before the court on the defendants' motion for partial dismissal of the plaintiff's amended complaint [ECF 51], the plaintiff's response in opposition [ECF 59] and the defendants' reply [ECF 68].  For reasons stated, the court has determined to grant the motion in part and deny the motion in part.

---

[1]  The plaintiff is a Delaware corporation with primary place of business in Palm Beach County, Florida.  The defendant US Capital is a Delaware limited liability company with principal place of business in San Francisco, California.  Jeffrey Sweeney, the CEO and Managing Partner of US Capital, is a resident of the State of California.  Because the amount in controversy exceeds $75,000.00, this court has jurisdiction over this dispute under its diversity jurisdiction.

## Fact Background[2]

US Capital approached Brooklands in April, 2013 concerning a possible commercial lending relationship. Ensuing negotiations resulted in the execution of two "term sheets" for extension of a proposed credit facility, contingent on the results of a due diligence investigation by US Capital, for which Brooklands was required to pay a $15,000 processing fee. After payment of the $15,000 fee, in May, 2013, Brooklands executed a further "Fee Agreement" submitted by US Capital which obligated Brooklands to pay a minimum of $45,000 in additional "break-up" fees if Brooklands declined a loan offer from US Capital or its assign which was "substantially along the lines" of the original term sheet proposal. This Agreement obligated Brooklands to negotiate exclusively with US Capital for a period of five years, and authorized US Capital to file a UCC lien against Brooklands' assets in order to protect its ability to collect additional "banking fees" consisting of 3% of any new financing procured by Brooklands during the term of Agreement, regardless of lending source. On May 2, 2013, US Capital filed a lien against Brooklands' assets in the form of a UCC-1 Financing Statement filed with the Delaware Department of State.

In the ensuing months, the parties continued to negotiate the terms of the proposed credit commitment, during which time US Capital made an unsuccessful attempt to bring in Entrepreneur Growth Capital, LLC (EGC) as an alternative lender; however, the parties were ultimately unable to come to an agreement and Brooklands decided to terminate its relationship with US Capital.

---

[2] The recited facts are drawn from the allegations of the plaintiff's operative amended complaint, which the court assumes to be true in the context of ruling on a motion to dismiss. *Marsh v. Butler County*, 268 F.3d 1014 (11th Cir. 2001). The court may also consider facts drawn from documents attached or incorporated by reference into the complaint, as well as documents which are referred to in the complaint, are central to the claim and whose contents are not in dispute, where the defendant attaches the document to its motion to dismiss. *Fuller v. SunTrust Banks, Inc*., 744 F.3d 685, 695-96 (11th Cir. 2014); *Solis-Ramirez v. United States Dept. of Justice,* 58 F.2d 1426, 130 (11th Cir. 1985).

This rupture led to the parties' execution of a "Full and Final Release Agreement" ("Release Agreement") on October 14, 2013, pursuant to which Brooklands and US Capital agreed to release each other from all claims arising out of or relating to the Fee Agreement.  Brooklands further agreed that US Capital would retain the previously paid $15,000 due diligence fee, and that it would  pay US Capital an additional $10,000 as a  "break-up" fee, in consideration for US Capital's agreement to terminate  all of its security interests in Brooklands' assets and its specific agreement to deliver a UCC-3 termination statement pertaining to its previously filed UCC-1 lien.

Brooklands  alleges that it fully  performed its obligations under the Release Agreement, but that US Capital breached the Agreement by filing a new UCC-1 financing statement against Brooklands' assets on November 22, 2013, and by failing to timely deliver a termination notice on its previously filed UCC-1 financing statement  (May 2013).  In addition, Brooklands alleges that US Capital's assign, EGC, filed a separate UCC lien against Brooklands' assets approximately one week after the Release Agreement was signed.

In early 2014, Brooklands sought financing through a third party,  Trade Finance Partners ("TFP"), an affiliate of The City of London Group, PLC, which conducted its own due diligence of Brooklands and allegedly was  prepared to offer funding,  until it discovered the existence of the UCC liens  filed by US Capital and its affiliate, Entrepreneur Growth Capital LLC.   When Brooklands learned of this impediment, it alerted US Capital and demanded immediate termination of the liens via email issued August 18, 2014.  US Capital, however, refused to release the liens, claiming an entitlement to a five-year lien pursuant to the original Fee Agreement.  Brooklands' new prospective lender, TFP, refused to proceed without termination of the defendants' pre-existing UCC liens, bringing Brooklands' negotiations with TFP to a standstill.

3

Brooklands filed this lawsuit on October 22, 2014, alleging that the UCC liens filed by US Capital and EGC remained pending despite its repeated demands for termination in accordance with the parties' October 2013 Release Agreement.  It acknowledges, in response to the defendants' current motion to dismiss, that US Capital finally did terminate its post-release UCC lien on October 23, 2014 – the day after suit was filed -- and that EGC likewise has since terminated its separate UCC lien.

In its now operative Amended Complaint, filed February 2, 2015, Brooklands alleges the following causes of action against US Capital and Jeffrey Sweeney ("Sweeney"), the CEO and Managing Partner of US Capital:  Racketeer Influenced and Corrupt Organization Act (RICO) violations based on a pattern of alleged racketeering activity beginning in April 2013, and continuing up through October 23, 2014, the day after suit was filed, when US Capital finally terminated its post-release UCC-1 lien (Counts 1 - 6); fraudulent inducement to contract based on events leading up to execution of the term sheets and related Fee Agreement (Counts 9-10); common law slander and libel based on fraudulent UCC filings (Counts 11-12); violation of § 817.535 (8) (a), Fla. Stat.[3] based on fraudulent UCC filings (Counts 14-15);  breach of contract (Release Agreement) against US Capital based on filing of the new UCC lien and failure to timely deliver a termination statement for the previously filed UCC lien (Count 17); breach of contract (Release Agreement)

---

[3] Fla. Stat. § 817.535(2) (a) provides that any person who files or causes another person to file an instrument in an official record which contains a materially false, fictitious or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a third degree felony.  Fla. Stat. §817.535(8)(a), Fla. Stat., creates a civil action in favor of any person adversely affected by an instrument filed in an official record which contains such a material false statement without regard to whether any criminal charges were pursued against the offender.

against US Capital based on failure to notify its assign, Entrepreneur Growth Capital, LLC,[4] of the fact of the Release, and to insure its assignee's compliance with the Release through termination of any UCC liens it may have independently filed against the assets of Brooklands (Count 18); unjust enrichment against US Capital seeking return of the $17,500 paid for "due diligence" and "break-up" fees under the Fee Agreement and Release Agreement (Count 19); intentional interference with an advantageous contractual agreement against Sweeney and US Capital based on US Capital's failure to terminate its UCC liens and Brooklands' consequent alleged loss of legitimate funding opportunities with Trade Finance Partners (Counts 23-24).

In the instant motion to dismiss, defendants assert that Brooklands' civil RICO claims (Counts 1-6) and fraudulent inducement claims (Counts 9-10) are barred by the general release of all claims that Brooklands executed on October 13, 2013, because these claims arise out of activity which preceded the parties' entry into the Release Agreement.  Defendants alternatively move to dismiss the RICO and fraudulent inducement claims for failure to state a claim on which relief may be granted.

In addition, defendants move to dismiss the tortious interference counts for failure to allege facts showing the existence of an identifiable agreement or understanding;  defendants move to dismiss the unjust enrichment count and common law slander/libel counts on ground the  conduct forming the basis of claim is the same as that governed by an express written agreement between the

---

[4] The plaintiff originally named Entrepreneur Growth Capital LLC as a defendant in this case. However, this party was voluntarily dismissed with prejudice on January 21, 2015 [ECF 29].  The Amended Complaint, filed February 2, 2015, however, retains the originally lodged counts against EGC for civil RICO violations (Counts 7-8); common law slander/libel (Count 13); violation of § 817.535(8)(a) (Count 16); unjust enrichment (Count 20); fraudulent inducement (Count 21) and breach of contract (Count 22).  The court shall *sua sponte* strike these claims against EGC pursuant to the plaintiffs previously filed notice of dismissal of this defendant with prejudice.

parties; and defendants move to dismiss the civil action under § 817.535(8) for fraudulent UCC filings on ground  this statute is not intended to regulate conduct occurring outside the State of Florida.[5]  The defendants do not seek dismissal of the breach of contract claims (Counts 17-18) arising out of US Capital's alleged  failure to perform its obligations under the Release Agreement.

### STANDARD OF REVIEW

The court accepts the allegations of the complaint as true and views the facts in the light most favorable to the plaintiff in deciding a motion to dismiss, *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), recognizing that a  plaintiff is required to allege "more than labels and conclusions" in stating its claim, and that a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007).

Ordinarily, a court considers only the complaint and exhibits attached to the complaint in determining a motion to dismiss.  In this case, however, the plaintiff has referred to and attached the October 13, 2013 Release Agreement as an exhibit to its complaint [Exhibit J], and the defendants have raised the defense of general release in their Rule 12(b)(6) motion as an absolute bar  to the RICO and fraudulent inducement claims.

Normally, a general release is an affirmative defense that is raised in a defendant' answer, and not by motion under Rule 12(b); however, it is properly raised here by way of motion to dismiss because the existence of the defense may be judged on the face of an exhibit which is attached to the plaintiff's complaint and made central to its claims. *Concorida v. Bendekovic*, 693 F.2d 1073 (11th

---

[5]  In its response to the defendants' motion, Brooklands concedes that Counts 14 and 15, asserting claims for violation of § 817.535(8)(a), are appropriately dismissed because it is apparent that US Capital did not file the November 2013 UCC lien within the "official record" of the State of Florida.  Pursuant to this acknowledgment, the Court shall dismiss these counts with prejudice.

Cir. 1982); *LeFrere v. Quezada*, 582 F.3d 1260 (11th Cir. 2009) (if complaint contains claim that is facially subject to affirmative defense, it may be dismissed on motion to dismiss for failure to state a claim).

## DISCUSSION

The court agrees that the "Full and Final Release Agreement" executed by Robert Faber, as President and CEO of Brooklands, and Jeffrey Sweeney, as CEO of US Capital, bars Brooklands' civil RICO and fraudulent inducement counts. This Release, in consideration of Brooklands' payment of $10,000 in "breakup fees" to US Capital, provides in pertinent part:

> Each of the parties hereto fully, mutually and forever completely release, acquit, and discharge the other party .... from any and all claims, demands, losses, damages, costs attorney's fees, actions, causes of action and liabilities of whatever kind and nature, whether known or unknown, suspected or claimed, which arise from, or are directly or indirectly related to or connected with the [May 2, 2013 Fee Agreement], including but not limited to any claims by [US Capital] for fees, reimbursement of expenses or other amounts under the Agreement.
> ....
>
> This Release is expressly intended to cover and include all future injuries and damage concerning the matter release hereby, including all rights and causes of action arising therefrom.

[ECF 41-1, P. 2]. The Release recites that it is made and entered into the State of California, and that it shall be interpreted under the laws of the State of California. It includes an acknowledgement, and explicit *waiver*, of the provisions of California Civil Code Section 1542, which is recited in the Release as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO THE CLAIMS WHICH THE CREDITOR DOES NOT NOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

[ECF 41-1, P. 2]  Further, the Release Agreement contains a non-reliance clause, captioned  "No Inducement," which reads:

> Each of the parties to this Release warrants that no promise or inducement has been made or offered by any of the parties, except as set forth here, and that this Release is not executed in reliance on any statement or representation of any of the parties or their representative, concerning the nature and extent of the injuries, damages or legal liabilities thereof.  The parties further represent that they have been represented by legal counsel during the course of the negotiations leading to the signing of this Release, and that they have been advised by legal counsel with respect to the meaning of this Release and its legal effect.

[ECF No. 41-1, p. 5]

The execution and delivery of the Release is not disputed.  Brooklands does not allege any promise separate and apart from the written contractual promises of the Release as a basis for its fraudulent inducement claims, but  merely argues that defendant did not intend to perform its obligations under the Release from the outset, much as it allegedly did not intend to perform its obligations under the term sheets and Fee Agreement.  Similarly, Brooklands contends that the defendants' entry into the Release Agreement was simply another fraudulent act committed as part of the alleged pattern of racketeering activity forming the predicate of its RICO claims.

The Court agrees that the Release Agreement operates as a bar of all RICO and fraudulent inducement claims asserted in this action.  It is  apparent that these claims both arise out of and relate to performance of the same contractual undertakings of US Capital which were the subject of the Release Agreement.  Brooklands claims that US Capital never intended to perform its due diligence obligations under the original term sheets, or to provide financing to Brooklands consistent with the results of a good faith due diligence investigation, and that it fraudulently sought to recover fees against plaintiff without any intention of performing any of its own obligations under the Fee

Agreement, and expressly bases its RICO claims on this course of conduct which began in April, 2013, when US Capital first approached Brooklands with a credit proposal,  and continued up through October 23, 2014, one day after this lawsuit was filed.

Clearly these claims could have been asserted at the time the Release Agreement was signed, since all facts necessary to state cause of action had occurred before the Release took effect.  That plaintiff seeks to base new claims on certain conduct post-dating the effective date of the Release does not change this result, because the post-filing conduct (filing a new UCC lien) is  a mere continuation of the conspiracy alleged in the complaint; thus, the alleged malignant post-release acts  are properly viewed as new overt acts within an ongoing conspiracy rather than new claims. Because the Release Agreement released these claims, the defendant's motion to dismiss the civil RICO claims based on general release is properly granted.  *See In re Managed Care,* 756 F.3d 1222 (11th Cir. 2014) (plaintiffs' claims under RICO and Sherman Act fell within scope of settlement agreement release); *Skilstaf, Inc. v. CVS Caremark Corp*, 669 F.3d 1005 (9th Cir. 2012) (release barred RICO claims which related to released claims); *In re Holywell Corp. v. The Bank of New York*, 49 B.R. 694 (S.D. Fla. 1985) (settlement agreement releasing all claims arising out of or relating to loan document barred RICO claims).

The same result obtains whether Florida or California law is applied to interpretation of the document. *Belasco v. Wells*, 234 Cal. App. 4th 409, 183 Cal. Rptr. 3d 840 (Cal. App. 2d Dist. 2015) (release and section 1542 waiver are  enforceable if reasonable, e.g. where explicit and  given on advice of counsel; general release given under these circumstances can be completely enforceable and act as complete bar to all claims, known or unknown at time of release, despite protestation by one party that he did not intend to release certain types of claims).

9

The motion to dismiss the fraudulent inducement claims, to the extent based on defendants' pre-release conduct (inducement of term sheets, fee agreement and commitment letters) shall also be granted on the basis of general release. *Caballero v Phoenix American Holdings, Inc*., 79 So.3d 106 (Fla. 3d DCA 2012) (general release bars all claims which have matured prior to execution of the release). To the extent based on defendants' alleged fraudulent promise to terminate its UCC liens as part of the release consideration, notwithstanding its secret intent to ignore this obligation, the fraudulent inducement claim fails because reliance on alleged misrepresentations or omissions in the course of settlement negotiations -- an inherently adversarial setting -- is unreasonable as a matter of law, *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999); *Somerset Pharmaceuticals, Inc. v Kimball*, 49 F. Supp. 2d 1335 (M.D. Fla. 1999), particularly where, as here, the release agreement includes a clear, unambiguous non-reliance provision, confirming that the parties are not relying on the representations of the other, and that they have consulted with counsel with respect to the meaning of the release document. *White Construction Co v. Martin Marietta Materials, Inc*., 633 F. Supp. 2d 1302 (M.D. Fla. 2009); *Topp Inc. v. Uniden America Corp*., 513 F. Supp. 2d 1345 (S.D. Fla. 2007).

Since plaintiff's RICO claims and fraudulent inducement claims are effectively based on pre-release conduct, they are barred by the general release of all claims executed on October 2013, and must be dismissed with prejudice, as an opportunity to amend would be futile. *Yamashita v. Merck & Co.*, 2013 WL 275536 (S.D. Fla. 2013). The court's ruling on the general release defense eliminates the need to consider the defendants' alternative challenges to the sufficiency of factual allegations pled to support the RICO and fraudulent inducement counts.

The court also concludes that the plaintiff's unjust enrichment claim, seeking return of fees

paid to US Capital  prior to and pursuant to obligations assumed by it under the Release Agreement, is also barred by the Release Agreement.  Finally, the court has considered and rejected the defendants' challenge to the sufficiency of allegations pled in support of the plaintiff's tortious interference claims with an advantageous business relationship, and common law slander/libel claims, and shall accordingly deny the motion to dismiss as to these claims.

**DECRETAL PROVISIONS**

Based on the foregoing, it is **ORDERED and ADJUDGED**:

1.  The defendant's motion to dismiss the RICO and fraudulent inducement claims based on the affirmative defense of general release is **GRANTED**, and these claims (Counts 1-6 and Counts 9-10) are **DISMISSED WITH PREJUDICE.**  The plaintiff's unjust enrichment claim (Count 19) is further **DISMISSED WITH PREJUDICE** based on the affirmative defense of general release.

2.  The defendant's motion to dismiss the plaintiff's tortious interference (Counts 23-24)and common law slander/libel claims (Counts 11-12) is **DENIED**.

3.  The defendant's motion to dismiss the claims under §817.535(8), Fla. Stat. based on fraudulent UCC filings, which is unopposed, is **GRANTED**, and these claims (Counts 14-15) are **DISMISSED WITH PREJUDICE.**

4.  All claims against defendant EGC are **DISMISSED WITH PREJUDICE** pursuant to plaintiff's previously filed notice of voluntary dismissal as to this defendant.

5.  The defendants shall file their answer to the plaintiff's remaining claims for breach of contract (Counts 17-18), tortious interference with an advantageous business relationship (Counts 23-24), and common law libel/slander based on fraudulent UCC filings (Counts 11-12) within **TEN (10) DAYS** from the date of entry of this order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 28th day of April,

2015.

Daniel T. K. Hurley
United States District Judge

cc.  All counsel